IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**NICOLETTE GEORGE**, by and through
her parents and guardians,
**ROBERT and FRANCES GEORGE,**

        **Plaintiffs,**

v.                                                                                              CIV No. 99-1318 LH/RLP

**NEW MEXICO STATE BOARD of
EDUCATION, NEW MEXICO
DEPARTMENT OF EDUCATION,
MICHAEL J. DAVIS, Superintendent of
Public Education, GALLUP-McKINLEY
COUNTY SCHOOL DISTRICT, ROBERT
GOMEZ, Superintendent of Gallup-McKinley
County School District, GALLUP-McKINLEY
COUNTY PUBLIC SCHOOL BOARD, and
J.R. THOMPSON, Gallup-McKinley County
Public School Board,**

        **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

      **THIS MATTER** comes before the Court on State's Motion to Dismiss (Docket No. 16),

filed on April 6, 2000, and on Local School Defendants' Motion to Dismiss Plaintiffs' First

Amended Complaint (Docket No. 31), filed on July 14, 2000. On May 16, 2000 the Court entered

an Order Staying Discovery, pending resolution of these two motions (Docket No. 30). The Court, having considered the briefs, relevant case law and arguments of the parties, for the reasons that follow, concludes that Defendants' motions shall be **granted** and that this case shall be **dismissed.**

## I.  Background

Plaintiffs' First Amended Complaint for Declaratory Relief and Damages ("FAC") was filed on April 25, 2000. At that time, Nicolette was a 16 year old student, disabled by microcephaly and mental retardation, i.e., a student with a disability as defined by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401(a) (*Id*. at ¶ 4).

Nicolette began attending Crownpoint Elementary School in the 1988-1989 school year and attended school within the Gallup-McKinley County School District until the 1997-1998 school year. (*Id.* at ¶¶ 1, 19). Plaintiffs allege that, because of Nicolette's disabilities, her educational program should include physical therapy, occupational therapy, and speech language pathology. (*Id*. at ¶ 21). The complaint alleges various deficiencies in Nicolette's education program and a patterned failure by the local Defendants, from 1987 through the end of 1994, to provide her with a free appropriate education ("FAPE")(*Id.* at ¶¶ 21-30). Paragraph 31 alleges that, on April 6, 1995, apparently for the first time, Plaintiffs requested an administrative hearing. According to the complaint, a hearing officer was selected and a hearing was scheduled (*Id.* at ¶¶32, 33). Plaintiffs withdrew the request for the administrative hearing allegedly because the local Defendants settled the issues to be addressed at the hearing, on July 10, 1995. (*Id*. at ¶ 33). Specifically, the local Defendants agreed to comply with Plaintiff's last valid individualized

education program ("IEP") by providing physical therapy by a licensed physical therapist two times per week and speech language pathology therapy by a licensed speech language pathologist three times per week. (*Id*.).

During the 1995-1996 school year, the local Defendants allegedly again failed to provide Nicolette with the special education and related services required by her prior IEP. The local Defendants allegedly continued to shorten her school day for reasons unrelated to her disability. (*Id*. at ¶ 34).

According to the complaint, rather than seeking to enforce the settlement agreement through a new due process hearing request, Plaintiffs next filed a complaint with the State Department of Education, regarding the local Defendants' failure to provide special education and related services, requesting that the State Department of Education directly provide Nicolette with special education and related services. (*Id*. at 35).

On March 12, 1996 the State Department of Education issued a Complaint Resolution Report, finding the local Defendants in non-compliance with the IDEA. (*Id*. at 37).

On March 27, 1996, the local Defendants sent a letter to the state Defendants indicating that the corrective actions contained in the report would be undertaken. According to the FAC, these proposed corrective actions substantially altered Nicolette's prior IEP (*Id*. at ¶ 38).

Plaintiffs learned of the proposed corrective actions on April 22, 1996 (*Id*. at ¶ 39). They informed the state Defendants that they did not agree with these proposed actions and continued to request that the State directly provide Nicolette with the special education and related services that she needed. These requests were ignored. (*Id*). No requests for an administrative hearing were filed by Plaintiff's parents at that juncture, nor did they appeal to the U.S. Department of

3

Education.  The next action taken by Plaintiffs, as reflected by the record, was the filing of this lawsuit in November of 1999.

Allegedly because of the Defendants' failure to properly educate Nicolette, she withdrew from the Gallup-McKinley County schools during the 1997-1998 school year, and enrolled in St. Michael's Association for Special Education, where she has allegedly been receiving an appropriate education and has been making progress.

Plaintiffs brought this action alleging that Defendants:   violated their duties under the IDEA (Count I); denied Nicolette rights guaranteed  to her under Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794, *et seq.* (Count II); violated § 22-13-1, *et seq.,* N.M.S.A. 1978 (Michie 1995).  New Mexico Educational Standards (Count III);  failed to provide rights to her guaranteed by the IDEA, in violation of 42 U.S.C. § 1983 (Count IV); and violated her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* (Count V).  The FAC seeks  declaratory relief, compensatory damages, costs and attorney fees. Specifically, Plaintiffs seek a declaratory judgement that Nicolette is an individual with a disability within the meaning of the IDEA,  has a right to be free from discrimination and receive a FAPE, and that Defendants' actions and omissions have violated her statutory rights. Plaintiffs  seek compensation for the educational and related services lost and for the regression in the education and abilities suffered by Nicolette.

## II.  Procedural Issues

The FAC was filed on April 25, 2000.  No extraneous materials were filed with the complaint.  Although Defendants titled their motions as "motions to dismiss", they submitted

4

evidentiary materials outside the pleadings in support of their motions. Given this unorthodox approach, *i.e.*, the submission of exhibits in connection with 12(b)(6) motions, it is incumbent upon the Court to initially determine whether it will analyze this motion under Rule 12(b) or under Rule 56.

FED.R.CIV.P. 12(b) provides that if "matters outside the pleading are presented to and not excluded by the court, [a Rule 12(b)(6) motion] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

I note that neither motion complies with Local Rule 56.1(b), in that the Defendants' accompanying memoranda contain no statement of material facts. Furthermore, I question whether the evidentiary materials submitted by both parties are within the confines of Rule 56, which mentions a court review of "pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits. . . " FED.R.CIV.P. 56(c). Rule 56(e) mandates that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence . . . . Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by deposition, answers to interrogatories, or further affidavits." The exhibits that have been submitted may well not be properly considered under Rule 56. Many of these exhibits are letters that may be inadmissable hearsay evidence, for example.

Given the improper format under Rule 56 of the motion itself and the fact that the exhibits relied upon by the parties may be largely inadmissable at trial, the Court declines to convert

Defendants' motions to summary judgment motions. Rather, the motions shall be reviewed only under Rule 12. Under Rule 12(c), this Court has discretion to decide whether or not to exclude supplementary materials. Because discovery has not yet been conducted in this case, and for the other reasons stated above, it would be inappropriate to apply Rule 56 to the pending motions to dismiss. For these reasons, all matters outside the pleadings are hereby excluded in the following Rule 12(b)(6) analysis. The Court will consider only the allegations contained in the pleadings.

Generally, motions to dismiss for failure to state a claim are viewed with disfavor and are therefore rarely granted. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990). In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and take the allegations asserted in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). All inferences are drawn in favor of the pleaders. *See Kamplain v. Curry County Bd. of Comm'rs,* 159 F.3d 1248, 1250 (10th Cir. 1998). A court should not grant a motion to dismiss for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Fuller v. Norton*, 86 F.3d 1016, 1020 (10th Cir. 1996). All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. *Jojola v. Chavez*, 55 F.3d 488, 494, n.8 (10th Cir. 1995)(*citing Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984)). Therefore, "the issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. at 236.

## III.  Federal Statutory Framework

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure the rights of children with disabilities and their parents or guardians are protected." 20 U.S.C. § 1400(d)(1)(A)-(B). To implement these goals, Congress mandated that state and local educational agencies receiving assistance under the IDEA establish procedures to ensure the provision of such services and the protection of these rights. *See Id.* at § 1415(a).  To identify necessary services, the IDEA requires representatives of the responsible educational agencies, in meetings with parents and teachers, to develop an individualized education program (IEP) for each child with a disability.

The IDEA requires states to provide the parents of disabled students the right to seek review of any decision concerning their child's education. *See* 20 U.S.C. § 1415.  Parents have the right to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id*. at § 1415 (b)(6).  Parents then are entitled to an impartial due process hearing conducted by a state or local educational agency. *See Id.* at § 1415(f).  If the hearing was conducted by a local educational agency, the parent is entitled to an appeal to the state educational agency. *See Id*. at § 1415 (g); *see also Honig v. Doe*, 484 U.S. 305, 326-27 (1988).  The Act provides that the right to bring a civil action accrues to a party aggrieved by the findings and decision made pursuant to an impartial due process hearing. *See id*. at

§ 1415(i)(2)(A).[1]  A complainant who is dissatisfied with the state's response may seek review by the United States Secretary of Education.  *See* 34 C.F.R. § 300.661(d).

The purpose of the exhaustion requirement is to permit agencies to exercise discretion and apply their expertise, to allow the complete development of a factual record before judicial review,  to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors.  *See Ass'n for Community Living v. Romer*, 992 F.2d  1040, 1044  (10th Cir. 1993).  The exhaustion doctrine promotes accuracy, efficiency, agency autonomy, and judicial economy.  The exhaustion requirement applies not only to claims brought under the IDEA but to claims brought under the Constitution, the Americans with Disabilities Act, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, if the civil action seeks relief that is also available under that subchapter.   *See* 20 U.S.C. § 1415 (l); *Weber v. Cranston School Committee*, 212 F.3d 41, 49-50 (1st Cir. 2000);  *Babicz v. Sch. Bd. of Broward County*, 135 F.3d 1420 (11th Cir. 1998);  *Hope v. Cortines*, 69 F.3d 687 (2d Cir.1995); *Charlie F. by Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989 (7thCir.1996); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 751 (2d Cir. 1987).

**IV.  Plaintiffs' Claims to Enforce Nicolette's Rights Under the IDEA Shall Be Dismissed for Failure to Exhaust Administrative Remedies.**

It is the Defendants' position that prior to filing this lawsuit, contrary to 20 U.S.C. §

---

[1]  While not relevant to this case, this section also provides  that the right to bring a civil action may arise from adecision and findings relating to the placement of a child with a disability in an alternative educational setting.

8

1415(l), Plaintiffs did not exhaust the procedures contained in §§1415(f) and (g).

Section 1415(f)(1) provides as follows:

Whenever a complaint has been received under subsection (b)(6) or (k) of this section, the parents involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency. Count I is a claim brought under the Individuals with Disabilities Education Act

Section 1415(g), entitled "Appeal", provides as follows:

If the hearing required by subsection (f) of this section is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency. Such agency shall conduct an impartial review of such decision. The officer conducting such review shall make an independent decision upon completion of such review.

### A.  The Settlement Agreement Was  Not Tantamount to Exhaustion

Plaintiffs' first response to Defendants' exhaustion arguments is that the 1995 due process complaint and settlement amount to exhaustion of the process. For the reasons that follow, I decline to accept this reasoning.

This case illustrates the problems created when a plaintiff circumvents the administrative review process. The fact that Plaintiffs filed and settled disputes with the local Defendants two years prior to their withdrawal of Nicolette from public schools does not amount to exhaustion.

The settlement agreement did not bar future claims arising from factual disputes after the date of the agreement, nor did it preclude enforcement of the terms of the settlement agreement. The IDEA requires annual review and revision of a student's IEP to determine whether goals are being achieved or to address lack of expected progress. 20 U.S.C. § 1414(d)(4)(A). The parents are advised of their procedural rights at each of those IEP meetings, with the attendant right to

file a due process complaint at any time to challenge IEP deficiencies. 20 U.S.C. § 1415(d)(1). Subsequent to their 1995 request, Plaintiffs did not request another due process hearing.

As the court concluded in *Hamilton v. Bd. of School Com'rs of Mobile County, Ala.*, 993 F. Supp. 884, 889 (S.D.Ala. 1996), consideration of a settlement as tantamount to exhaustion would undermine the purposes of the exhaustion requirement. There is nothing inherent to a settlement agreement that might fulfill the purposes otherwise satisfied by administrative review. These are issues best resolved by the expertise of someone familiar with the educational needs of the disabled and with the resources best suited to meet those needs. The administrative process is set up so that an impartial hearing officer, with expertise in these areas, can make findings and conclusions, for review ultimately by this Court. The exhaustion doctrine embodies the notion that "agencies, not the courts, ought to have primary responsibility for the programs that Congress charged them to administer." *McCarthy v. Maddigan*, 503 U.S. 140, 145 (1992). As noted by the Sixth Circuit in *Crocker v. Tenn. Secondary School Athletic Ass'n.*, 873 F.2d 933, 935 (6th Cir. 1989), "Federal courts – generalists with no experience in the educational needs of handicapped students – are given the benefit of expert factfinding by the state agency devoted to this very purpose."

Failure to require exhaustion would encourage parties to circumvent administrative review by entering into, then disregarding, settlement agreements in order to go directly to federal court. Finally, holding that settlement is equivalent to exhaustion would prevent school systems and education departments from correcting their own errors without interference from the courts.

In *Urban by Urban v. Jefferson County School District R-1*, 89 F.3d 720 (10th Cir. 1996), the Tenth Circuit decided that parents must exhaust administrative remedies even where

10

the complaint attacked a second IEP for deficiencies that allegedly were the same as those raised in a previous administrative proceeding. *Id*. at 725. Consequently, any of Plaintiffs' claims of deficiencies in Nicolette's education program subsequent to the 1995 settlement would be subject to the exhaustion of administrative remedies requirement. Nicolette was in public schools for two subsequent school years prior to her transfer to private school.

For these reasons, I conclude that the 1995 due process complaint and settlement do not amount to exhaustion of the process.

### B. The State Complaint Process Undertaken by Plaintiffs Did Not Satisfy the Exhaustion Requirement Under the IDEA.

On January 11, 1996, Plaintiffs sent a letter to the New Mexico Superintendent of Public Instruction, making reference to complaint resolution procedures contained at 34 C.F.R. 300.662.[2] According to the FAC, this letter requested that the State directly provide Nicolette with special education and related services. The State Department of Education subsequently concluded that the local Defendants were not in compliance with the IDEA. The local Defendants then wrote a letter to the State Department of Education, indicating proposed corrective

---

[2] These complaint resolution procedures ("CRPs) were formerly part of the Education Department General Administrative Regulations ("EDGAR"), 34 C.F.R. § 76.780 (1983). The "EDGAR" complaint procedures appear to comprise an independent administrative scheme enforceable only through the United States Secretary of Education. *See Ass'n for Community Living In Colo. v. Romer*, 992 F.2d at 1045.; *Richards v. Fairfax County School Bd.,*, 798 F.Supp 338, 342 (E.D. Va. 1992), *aff'd*, 7 F.3d 225 (4th Cir. 1993); *Christopher W. v. Portsmouth School Comm.,* 877 F.2d 1089, 1091, n.2 (1st Cir. 1989). The EDGAR procedures provided "an administrative mechanism for assuring that a state complies with state-administered federal programs, including the [IDEA, but were] distinguished from the specific administrative procedures detailed in the [IDEA] itself." *Christopher W. v. Portsmouth School Comm.* at 1090. The July 8, 1992 amendments to EDGAR relocated these regulations to 34 C.F.R. Part 300, the implementing regulations for the IDEA. While the EDGAR procedures applied to many statutes, the CRP regulations provide a procedure (distinct from the IDEA due process hearing) for filing complaints under the IDEA. Under 34 C.F.R. §§ 300.660 and 300.662, states must adopt a written complaint resolution procedure for receiving and resolving complaints that the state or a local agency is violating IDEA or its regulations.

measures. According to the FAC, these proposed actions substantially altered Nicolette's prior IEP. Plaintiffs informed the state Defendants that they did not agree with this proposal from the local Defendants. They took no further legal action in this regard for more than three years, when they filed this lawsuit in November of 1999. Plaintiffs argue that these state complaint resolution procedures ("CPRs") constituted exhaustion of their administrative remedies or that this was an adequate alternative to the due process hearing route.

Plaintiffs' actions are remarkably similar to those taken in the case of *Weber v. Cranston School Committee*, 212 F.3d 41 (1st Cir. 2000). In that case, although Plaintiff filed three CRP complaints with the State Department of Education, two complaints with the state Office of Equity and Access, and participated in a mediation on the issue of declassification, she never initiated the due process hearing described in the IDEA. The *Weber* court concluded: "IDEA's mandate is explicit: plaintiffs must exhaust IDEA's impartial due process hearing procedures in order to bring a civil action under subchapter II of IDEA or any "such law [ ] seeking relief that is also available" under subchapter II of the IDEA." *Id.* at 53. The *Weber* court cited 20 U.S.C. § 1415(l) in support of this conclusion.

Further the *Weber* court stated:

The case law confirms that state and federal complaint procedures other than the IDEA due process hearing do not suffice for exhaustion purposes. Even the CPR procedures (formerly known as EDGAR), which implement IDEA, are "not an adequate alternative to exhausting administrative remedies under IDEA." *Association for Community Living in Colo. v. Romer*, 992 F.2d 1040, 1043-44 (10th Cir. 1993) (analyzing the EDGAR provisions); *Megan v. Independent Sch. Dist.*, 57 F.Supp.2d 776, 790 (D.Minn.1999) (reaching the same conclusion after the amendments that converted EDGAR into the CRP implementing regulations of IDEA). In *Christopher W. v. Portsmouth School Committee*, 877 F.2d 1089, 1099 (1st Cir.1989), we held that a plaintiff who had failed to pursue a due process hearing but had filed an EDGAR complaint had not satisfactorily exhausted administrative remedies.

*Weber v. Cranston School Committee* at 53 (*footnote omitted*).

I am persuaded by the rationale of the *Weber* court, especially given its reliance on the *Romer* case from the Tenth Circuit .  As the Tenth Circuit noted in *Romer*:

> Although the EDGAR complaint did notify [Colorado Department of Education] of the alleged violations and afford it an opportunity to correct the alleged error, . . . it did not further any of the other purposes of the exhaustion requirement.  The EDGAR procedures are different in both purpose and scope from those in the IDEA and do not provide parents who file complaints with the same opportunities for a full administrative hearing and judicial review. . . . Unlike EDGAR, the IDEA was carefully tailored to ensure that complainants receive the benefits of a full administrative hearing prior to seeking judicial review and that the reviewing court has the benefit of an administrative record.

*Ass'n for Community Living in Colo v. Romer* at 1045.

Based upon the statutory language and legal precedent[3] on this topic, I must conclude that Plaintiffs' actions taken pursuant to the state CRP did not fulfill the IDEA exhaustion requirement.

### C.  There is No Basis to Conclude That It Would Have Been "Futile" For Plaintiffs to Resort to the Administrative Process Mandated by the IDEA.

Plaintiffs' final position is that it became futile to resort to the administrative process and consequently the exhaustion requirement should be waived.  More specifically, Plaintiffs argue that when a child is denied  services promised in an IEP, that renders administrative efforts futile, relying upon the case of *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, (2d Cir.1992).  They argue that it would be futile for them to again go through the administrative process when it has

---

[3] *See also Megan v. Independent Sch. Dist. No. 625*, 57 F.Supp2d 776, 785 (D.Minn.1999)(characterizing the CPR as an alternative means to enforce IDEA provisions, but noting that the CRP "does not fall within the exhaustive list of procedural requirements contemplated by § 1415."

been shown that this process offered no relief for them.

Exhaustion of remedies is not required if adequate relief is not reasonably available or pursuit of such relief would be futile. *Hayes v. Unified School Dist. No. 377*, 877 F.2d 809, 814 (10th Cir. 1989). Plaintiffs bear the burden of demonstrating that their claims fall into an exception to the exhaustion requirement. *See Gardner v. School Bd. Caddo Parish*, 958 F.2d 108, 110 (5th Cir. 1992)

In this case, Plaintiffs challenge the Defendants' failure to comply with Plaintiffs' last valid IEP by providing physical therapy by a licensed physical therapist two times per week and speech language pathology therapy by a licensed speech language pathologist three times per week. The Court recognizes that this was allegedly the topic that was the subject of the settlement agreement, that it is Plaintiffs' position that they had already requested an administrative hearing to obtain this relief, and that Defendants agreed to this course of action and then reneged on their agreement. The Court can understand that in layman's terms, it might appear "futile" to Plaintiffs for them to seek an administrative hearing a second time to obtain compliance with this IEP, when Defendants have reneged on their agreement. Nothing in the IDEA however, states that a plaintiff need not exhaust administrative remedies if defendants continue to fail to provide the services contained in an IEP, despite their specific agreement to do so.

The remedies available administratively do not appear incapable of resolving the issues involved. In fact, this is the very type of problem that is intended to be addressed by the administrative remedies available: getting an impartial hearing officer to review the failure of the local Defendants to provide services contained in the last IEP or to review the corrective action

suggested by the local Defendants in 1996. Nothing is alleged that indicates a situation not anticipated by this administrative process. An exception to the exhaustion requirement based on futility is not warranted.

Legally the term "futile" has been applied to situations when plaintiffs allege "structural or systemic failure and seek system-wide reforms." *Ass'n for Community Living v. Romer*, 992 F.2d at 1044. The violations alleged and relief requested in this case do not target structural or due process concerns, but rather the effect of an individual failure to implement an IEP for one child. This is not the kind of system violation that renders the exhaustion requirement inadequate or futile. *Hoeft v. Tucson Unified School Dist.,* 967 F.2d 1298, 1307 (9th Cir. 1992).

Considering Plaintiffs' allegations in the light most favorable to them, I conclude that these allegations do not fall within the futility exception to the exhaustion rule. Furthermore, as stated above, Plaintiffs have not established that they have satisfied the exhaustion requirement. Accordingly the claims contained in Count I (Violation of IDEA); Count II (Violation of § 504); Count IV (Violation of § 1983)[4]; and Count V (Violation of ADA) shall all be **dismissed**.

## V.  Count III

Plaintiffs concede in their response briefs that Count III should be dismissed as to all Defendants.

---

[4] In Count IV, Plaintiffs allege that Defendants have failed to provide rights to Nicolette guaranteed by the IDEA, in violation of 42 U.S.C. § 1983. The Tenth Circuit has recently held that § 1983 may not be used to remedy IDEA violations. *Padilla v. School District No. 1 in the City and County of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000). This is an alternate ground for the dismissal of Count IV.

## VI.  Conclusion

The federal claim in this case are not ripe for federal court review.  In the IDEA, Congress has provided an administrative review mechanism that must be exhausted prior to filing any federal claim arising from allegations of violations of the statute.  Plaintiffs have failed to exhaust their remedies, and have established no rationale to be exempted from the exhaustion requirement.  Plaintiffs must first exhaust the administrative remedies before they can bring an action in the district court.  This Court lacks jurisdiction to reach the merits of the federal claims contained in Counts I, II, IV and V.  Count III is dismissed by concession of Plaintiffs.

**WHEREFORE**, for the reasons contained herein it is hereby ordered that this case shall be dismissed in its entirety.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**